## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

David **SANTIAGO**,

**Plaintiff**,

v.

**CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

Civ. No. 15–0612 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

David Santiago brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

## I.   PROCEDURAL BACKGROUND

Mr. Santiago seeks to reverse an ALJ's finding that he was not disabled from March 30, 2011, the alleged onset date, through September 23, 2013. He applied for DIB in February 2012, claiming a complete inability to work based on the sequelae of a fracture to his left ankle, back issues, and obesity. (R. 61)[1] His application was denied initially on April 30, 2012 (R. 125–29), and upon reconsideration on June 13, 2012 (R. 131–37). In July 2012, ALJ Donna A. Krappa conducted an administrative hearing, at which Mr. Santiago testified and was represented by counsel. (R. 76–106) ALJ Krappa sent interrogatories

---

[1]     Pages of the administrative record (ECF no. 5) are cited as "R. __."

to and received additional evidence from Patricia Sasona, a vocational expert, who concluded that Santiago could perform his past relevant work as a car driver. (R. 227–44, 61–71) Those results were sent to Mr. Santiago's counsel, who did not submit anything in addition. (R. 61, 245–46)

On September 23, 2013, ALJ Krappa issued her decision denying Mr. Santiago's DIB application. (R. 61–71). The Appeals Council denied Santiago's request for review (R. 10–16), rendering the ALJ's decision the final decision of the Commissioner.

## II.   STANDARD OF REVIEW AND REQUIRED FIVE STEP ANALYSIS

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d

2

Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not

3

disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

## B. The ALJ's Five-Step Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is

capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

ALJ Krappa properly followed that five step process. Her conclusions may be summarized as follows.

At step one, the ALJ determined that Mr. Santiago had not engaged in substantial gainful activity in the relevant period. At step two, the ALJ found that Mr. Santiago's status post injury of the left foot/ankle, disorder of the back, and obesity were "severe." (R. 64)

At step three, the ALJ determined that Ms. Figueroa's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (R. 64 ¶ 4) In particular, ALJ Krappa considered Listing 1.06 and concluded that medically acceptable imaging did not indicate a fracture and that the evidence did not demonstrate inability to ambulate effectively.

The ALJ then determined Mr. Santiago's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant is capable of the *exertional demands* of light work as defined under The Regulations; specifically, he is able to: lift/carry 20 pounds, occasionally and 10 pounds frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an 8-hour work day (if given the opportunity at the 45 minute-1 hour mark to stand and stretch for 3–5 minutes); and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the *postural and environmental demands* of work, I find that the claimant is able to perform jobs: that require occasional use of ladders, ropes, or scaffolds; that require frequent (as opposed to unlimited) use of ramps or stairs; and that require occasional balancing, stooping, but no kneeling, crouching, and/or crawling.

(R. 65 ¶ 5)

At step four, based on that RFC, as well as Mr. Santiago's age, education, and employment history, ALJ Krappa determined that he was not capable of

performing past relevant work as a truck driver, but did remain capable of performing his past relevant work as a car driver. (R. 71 ¶ 6) This conclusion rested in part on the evidence of Ms. Sasona, the vocational expert, who stated that the job of car driver does not require the performance of functions exceeding Mr. Santiago's RFC. (R. 71, R. 237–44)

Based on that step 4 finding, benefits were denied without the need for a step 5 analysis.

## III. ANALYSIS

### A. Due process/denial of review of new evidence

Santiago first claims that the denial of Appeals Council review, as it interacted with his change of representative, resulted in a denial of due process and failure to consider post-hearing evidence. (*See* Pl. Br. points I, VII) That post-hearing evidence allegedly documented Dr. Jakubowicz's June 2014 diagnosis of Complex Regional Pain Syndrome. (Pl. Br. point VII, p.23) According to Santiago, the Appeals Council "fail[ed] to review the new and material evidence from the prior attorney, which provided a significant new diagnosis explaining the Plaintiff's symptoms." (Pl. Br. 12) That "new diagnosis" of Complex Regional Pain Syndrome ("CRPS"), says Santiago, might well have convinced the ALJ to credit his subjective complaints and reach a different result.

#### 1. Change of representative, request for records, failure to submit brief

The ALJ rendered her decision on September 23, 2013. On October 16, 2013, Santiago filed a request for review by the SSA Appeals Council. (R. 56) That request was filed through his non-attorney case representative, James Reeves, who had also assisted at Santiago's hearing before the ALJ.

On October 31, 2013, the SSA sent Reeves and Santiago a letter. (R. 46) That letter denied Santiago's request for copies of exhibits or digital recordings of the case records. The request was denied because the case records were available online. (R. 47)

6

The same letter granted Reeves' request for an extension of time to submit "more evidence or a statement about the facts and the law in this case." (*Id.*) The extension was granted for 25 days only, and the letter warned that the SSA "will not allow more time to send information except for *very good reasons.*" (*Id.*) The letter also enclosed a copy of instructions for using the online case processing system, and barcodes to be used in submitting materials.[2] (R. 51–53) The letter was sent to Reeves, and cc'd to Mr. Santiago at his home address. (48, 49)

Reeves did take advantage of the SSA's grant of leave to file additional evidence. In particular, he submitted records of post-hearing treatment by Dr. Brian Jakubowicz, dating from January–June 2014. (R. 19–46) Those records are described in more detail below.

Nearly a year later, by a written form dated September 29, 2014, and filed October 2, 2014, Santiago appointed his current counsel, Ms. Mazur, as his representative. (R. 18) Ms. Mazur attaches copies of fax correspondence between herself and the Appeals Council. (ECF nos. 10, 14-1) The upshot seems to be as follows:

On October 1 and/or 6, 2014, Ms. Mazur faxed to the Appeals Council a copy of a letter to Reeves terminating his representation; an Attorney Fees Agreement between Santiago and Mazur; and an appointment of Mazur as representative. (ECF no. 14-1 at 11–17) On October 10, 2014, Mazur faxed to the Appeals Council an amended request for review of the ALJ's decision. (ECF no. 14-1 at 7–8) In the grounds for review section, Mazur typed in a request to be furnished the audio and exhibit CDs and barcodes, and asked for 60 days to

---

[2]     Confusingly, this insert appears to address either or both of two situations: "We are forwarding a copy of the file and/or hearing recording to you on a compact disc (CD), as requested *or* your request for an extension of time to submit additional material (e.g., additional evidence and/or contentions) has been granted." The letter makes it clear that only the second applies; the request to supply a physical copy of the record was denied.

submit a brief along with new and material evidence. (*Id.* at 8) On November 6, 2014, Reeves sent a letter to SSA confirming that he had been terminated as Santiago's representative. (R. 17) On November 14, 2014, Mazur submitted duplicate copies of earlier papers; requested copies of the exhibit file, media file and barcodes; and asked the Appeals Council to "see that we are allowed access to this case on ERE." (ECF no. 14-1 at 5)

On November 26, 2014, Mazur again faxed the Appeals Council stating that she had not received the audio file, exhibit file, and barcodes as requested. According to the fax, "Becky at the inquiries number" had earlier told Mazur that those materials had been "forwarded to [Santiago's] prior attorney on Oct 30, 2014."[3] (ECF no. 14-1 at 3) Mazur states or implies that it was as a result of the SSA's failure to send her the case file that she did not file a brief with the Appeals Council.

Two weeks later, on December 9, 2014, the Appeals Council filed its notice of denial of review. (R. 10–16)

### 2. Appeals Council's consideration of additional records

As noted above, Reeves did submit to the Appeals Council the records of post-hearing treatment by Dr. Jakubowicz. Indeed, the Appeals Council, in an order, stated that it had "received additional evidence which it is making part of the record" as Exhibit 6F. (R. 15) That Order specifically incorporates Dr. Jakubowicz's treatment records from June 2014, which contain the "new diagnosis" of CRPS that is the basis of Santiago's argument here.[4]

In January–June 2014 (*i.e.*, after the ALJ's decision, while the request for review was pending), Mr. Santiago was treated by Dr. Brian Jakubowicz of

---

[3]    This may be a misunderstood reference to the letter of October 31, 2013 (not 2014) addressed to Santiago's non-attorney representative (not "prior attorney"), described at p. 6 & n.2 above.

[4]    The Appeals Council's decision states that all of the treatment records from January–June 2014 were considered. (R. 11)

Total Pain Care in Paterson, NJ. Reeves submitted records of Dr. Jakubowicz's treatment to the Appeals Council, requesting that those records be considered as post-hearing evidence.

Dr. Jakubowicz had apparently treated Mr. Santiago before. (The initial report, dated January 10, 2014, states that Santiago had returned "after a hiatus of six months.") (R. 45) In January 2014, Jakubowicz diagnosed Santiago with lumbar radiculopathy and "possible peripheral neuropathy." He noted that Santiago walks with a cane. (R.45–46)

On February 10, 2014, Dr. Jakubowicz performed a Left L5-S1 transforaminal epidural steroid injection under fluoroscopic guidance. The stated diagnosis was lumbar radiculitis. (R. 22, 42)

At a visit on March 4, 2014, Santiago reported no improvement as to the left foot pain. The doctor adjusted his medication (Lyrica, K1 compound, ibuprofen) and recommended that a neurologist "help differentiate the peripheral component from the radicular component." The doctor noted that Santiago "may have CRPS[5] type I at this point, but the distribution of pain is very specific over the left foot vs extending from the injured area, diffusely and involving the entire foot." (R. 40–41) A visit on April 8, 2014, did not produce any new diagnosis.

On April 23, 2014, Dr. Jakubowicz performed a Left L5-S1 transforaminal epidural steroid injection under fluoroscopic guidance. The preoperative and postoperative diagnosis was lumbar radiculitis. (R. 21)

Visits on May 6, 2014, and May 30, 2014, did not produce an altered diagnosis, although medication was adjusted. (R. 31–39)

---

[5]    An apparent reference to Complex Regional Pain Syndrome. (Santiago's counsel substitutes the word "Chronic" for "Complex.") Type I refers to CRPS that occurs after an illness or injury that did not directly damage nerves. *See* www.mayoclinic.org/diseases-conditions/complex-regional-pain-syndrome/basics/causes/con-20022844.

9

Santiago focuses on the Operative Report of June 11, 2014. On that date, Dr. Jakubowicz performed a left lumbar sympathetic nerve block under fluoroscopic guidance. (R. 19) The Operative Report contains a preoperative and postoperative diagnosis of "Complex regional pain syndrome [CRPS] of the lower left extremity." *Id.*

On June 27, 2014, Dr. Jakubowicz reported alleviation of pain, with greater than 50% relief overall. Once again, however, the diagnosis is "LS lumbar radiculopathy ... without any peripheral neuropathy seen on EMG." The doctor, as he did before June 11, 2014, states only that Santiago "*may* have CRPS type 1 at this point with a sympathetically maintained component." (R. 26–27) The final item is a July 7, 2014 report of a missed appointment. (R. 24–25)

### 3.    Discussion

The claim here is that a denial of procedural due process prevented the Appeals Council from considering the post-hearing diagnosis of CRPS. I disagree that there was a denial of due process. I also hold that any procedural error was harmless because the Appeals Council did consider the proffered evidence and validly concluded that it was not relevant.

First—although I do not rest my decision on this basis alone—there is no clear basis for this Court to review Appeals Council procedures as such. *See* Section I.A, *supra* (summary of standards of review under 42 U.S.C. § 405(g)). This Court has statutory authority to review final decisions of the agency.

An applicant dissatisfied by the ALJ's decision may, of course, seek Appeals Council review. 20 C.F.R. § 404.900. "[T]he regulations provide that the Appeals Council will grant review only if it finds that the ALJ's decision 'is contrary to the weight of the evidence currently of record.'" *Matthews v. Apfel*, 239 F.3d 589, 591–92 (3d Cir. 2001). But if the Appeals Council, as in this case, denies review, the ALJ's decision becomes the final decision of the SSA.

It is that final decision—the ALJ's decision—that this Court reviews under the standards of 42 U.S.C. § 405(g).

> As to such review, the Court's options are limited.
>
> To summarize the options open to the district court, when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review). However, when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review).

*Matthews*, 239 F.3d at 593. Review of the Appeals Council's interstitial decision to deny review fits very awkwardly, if at all, within that scheme. *See Mays v. Barnhart*, 78 F. App'x 808, 814 (3d Cir. 2003) (Appeals Council's failure to consider applicant's brief and its denial of review are not within the court's statutory authority to review final decisions of the SSA).

Second, there was no denial of due process in any event. On October 16, 2013, a request for review by the SSA Appeals Council was filed by Santiago's prior representative, James Reeves. (R. 56) Reeves sought a physical copy of the record of the case, but the request was denied in favor of online electronic access. On October 31, 2013, the SSA granted Santiago (*per* Reeves) a 25-day extension of time to submit any briefing or supplemental evidence. Reeves did not submit any legal argument, but he did submit the post-hearing evidence of Dr. Jakubowicz's 2014 CRPS diagnosis. The October 31, 2013 letter to Reeves granting the 25-day extension warned that no further extensions would be granted except "for very good reasons." Santiago was cc'd on the relevant correspondence.

It was not until a year later that Santiago dismissed Reeves and hired his current counsel, who attempted to restart the clock on the administrative appeal. Counsel requested physical copies of the administrative record (already denied a year before). She requested an extension of time to submit a brief and

new evidence (already granted a year before, but for a period of only 25 days). Counsel states, with dubious support, that Reeves then possessed the relevant records. No evidence of efforts to obtain the records from Reeves appears. Nor does counsel state any legal basis for the proposition that her belated retention required the Appeals Council to restart the clock on a year-old appeal that was on the brink of being decided.

Third, any arguable procedural error was harmless. The primary injury of which Santiago complains is that the Appeals Council failed to consider the post-hearing CRPS diagnosis of Dr. Jakubowicz. That is plainly incorrect. The Appeals Council, in an order, incorporated that very evidence into the record, assigned it Exhibit no. 6F, and stated that it would be considered. (R. 15) The Appeals Council's decision cites the new evidence and states reasons for treating it as immaterial. (R. 11)

Fourth, the Appeals Council validly discounted this post-hearing evidence. The ALJ's decision finds that there was no disability through September 23, 2013. The Appeals Council was empowered to consider after-acquired evidence, but only to the extent it was relevant to the pre-September 23, 2013 period of disability. That is, any evidence submitted to the Appeals Council must be "'new and material' evidence that relates to the period on or before the date of the ALJ's hearing decision. *See* 20 C.F.R. § 404.970(b)" *Matthews*, 239 F.3d at 591–92. The Appeals Council considered this new evidence but found it was not relevant to the period of disability:

> We also looked at ... the records from Total Pain Care dated January 10, 2014 to July 7, 2014 (23 pages). The Administrative Law Judge decided your case through September 23, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 23, 2013.
>
> If you want us to consider whether you were disabled after September 23, 2013, you need to apply again.

(R. 11)

The Appeals Council's decision was well founded. Doctor Jakubowicz's reports date from the first half of 2014, well after the period of disability. Two reports contain a tentative statement that Santiago "*may* have CRPS type I *at this point*." (*E.g.*, R. 27, 41) Those statements—not even diagnoses—are explicitly confined to "this point" in time, and say nothing about Santiago's condition during the period of disability. The single Operative Report that lists CRPS as a diagnosis is dated June 11, 2014, and it contains nothing to indicate that a CRPS diagnosis would have been appropriate at any time before September 23, 2013. I note also that this is a report of a procedure, not a diagnostic report; the report of Santiago's next visit, on June 27, 2014, returns to the tentative "may ... at this point" language. (R. 27)

If this new evidence were presented to me as an original matter, my standard for remanding the case would be similar. A so-called "sentence six" remand under 42 U.S.C. § 405(g) is appropriate only when the new evidence is material. *Matthews*, 239 F.3d at 592–93; *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 n.3 (4th Cir. 1991). For me, as for the Appeals Council, the timing element is central to materiality: "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)(quoting *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982)).

This new evidence, even taken on its own equivocal terms, does not relate to the pre-September 23, 2013 period of disability. It is not material.

Accordingly, Mr. Santiago's appeal is denied to the extent it rests on his claim that the Appeals Council denied him due process and wrongfully failed to consider the post-hearing diagnosis of CRPS.

**B.    Subjective Complaints**

Mr. Santiago next claims that the ALJ failed to properly evaluate or weigh his subjective claims as to the severity of his symptoms.

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. *See* SSR 96-7p, 1996 WL 374186, at *4.

Social Security Regulation 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Such credibility determinations are reserved for the ALJ:

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

*Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). *See also* 20 C.F.R. § 404.1529(c); *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 F. App'x 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc.*

14

*Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit his ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence ... is a useful indicator." *Id.* The ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

The ALJ here discharged that responsibility. Her decision, supported by substantial evidence of record, represents a classic weighing of evidence to which the court must defer. I will confine myself to a sampling of the evidence, which is discussed by the ALJ at R. 65–71.

Mr. Santiago testified to his physical pain and the severity of his symptoms. He had an accident at work on March 30, 2011. The victim of a initially misdiagnosed ankle fracture, he suffers chronic and intense foot, leg, and lower back pain. He can drive, but needs a cane to walk, and climbs the stairs to his second floor living quarters with difficulty. He can stand and sit for only short periods, and sleeps three hours per night. Because he can no longer exercise, he now is overweight (5'6", 273 lbs., in the obese range). Having had a bad reaction to Percocet, he takes non-narcotic drugs such as ibuprofen and Aleve. His leg sometimes gives out. His days consist largely of sedentary activities such as watching television and reading.

Against these complaints the ALJ weighed the medical evidence. She found that Mr. Santiago's medical impairments could reasonably be expected

15

to cause symptoms of this kind; she concluded, however, that his testimony as to the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the other evidence. (R. 67)

The initial treating physician was Dr. Kenneth A. Levitsky, an orthopedic surgeon. On April 23, 2011, he diagnosed Santiago with a fracture of the left talus with tear of the TFL, and bone contusion calcaneus and cuboid. The doctor prescribed Relafen and advised that Santiago refrain from working pending a CAT scan. (R. 67) A May 2011 CT scan revealed a comminute, depressed fracture involving the medial, anterior aspect of the talus and calcaneal spurs. (R. 68)

On August 23, 2011, Mr. Santiago underwent surgery on the ankle. In October 2011, Dr. Levitsky noted that the ankle was stable, and prescribed a brace. He believed a return to work would be possible shortly. On October 19, 2011, however, Santiago reported that he had twisted the ankle and was again in pain. (R. 68)

MRI results, as interpreted by Dr. Levitsky, showed some improvement. He opined that Santiago could perform sedentary work pending a functional capacity evaluation (FCE). (R. 68)

The FCE was performed on December 20, 2011. It showed that Santiago could perform medium category work with occasional lifting and work up to 50 pounds. On January 5, 2012, Dr. Levitsky reported maximum medical improvement and discharged Santiago from treatment, subject to the limitations of the FCE. (R. 68)

On March 20, 2013, Santiago saw another orthopedist, Dr. Robert Greenbaum, complaining of pain in his left ankle and lower back. Greenbaum noted the prior injuries, thickening and some tenderness of the left ankle. Dorsiflexion was just past neural, with plantar flexion of 15 to 20 degrees. (R. 68) The left lower extremity was neurovascularly intact. In general, range of motion of the leg and hips was markedly limited, about one third of normal,

with discomfort. The doctor prescribed Ultracet for pain and Mobic 15 mg. (R. 69)

On May 2, 2013, Dr. Greenbaum noted a range of motion of approximately one half normal. Other aspects were similar to the earlier examination. He diagnosed the patient with chronic lumbosacral strain, rule ou left-side lumbar radiculitis, and tenosynovitis, left ankle.

On May 18, 2013, Santiago underwent an MRI. It showed mild diffuse disc bulges at the L4-L5 and L5-S1 levels. Associated symptoms included mild bilateral neural foraminal narrowing, mild compression of the bilateral SI nerved roots, and mild central canal stenosis. (R. 69)

Before that MRI, a State agency physician opined that Santiago was capable of a range of medium work. Based on the MRI, however, the ALJ revised that assessment. The disc bulging, combined with the ankle disorder and obesity, led the ALJ to conclude that he was "limited to a range of light work." (R. 70)

The ALJ considered that Santiago did take care of his children, drive a car, and attend religious services regularly. She noted record evidence of normal gait and no trouble with transfers during examination. Some motor strength tests gave results of 5/5 in upper and lower extremities, and he is neurovascularly intact. The ALJ noted that Santiago took fairly mild medications, such as ibuprofen and Aleve. He was cleared by the doctor to return to work, although he did not do so. There was no evidence of trips to the emergency room or the like. (R. 70)

For all these reasons, the ALJ concluded that Santiago's symptoms were real and that they would limit the range of work he could perform. His complaints of severe debilitating pain, however, were exaggerated, and the ALJ rejected his claim of total disability. (R. 70)

The ALJ's weighing of evidence was careful, and she made specific findings to support her conclusions. Whether the court would weigh the

17

evidence the same way is irrelevant. Because the ALJ's findings and conclusions are supported by substantial evidence, I must sustain them.

### C.     Residual Functional Capacity

Mr. Santiago next argues that the ALJ's determination of his RFC was flawed because it is based on an underassessment of the extent of his disability. This is really a repackaging of his argument in Section III.B, above, that the ALJ should have weighed the evidence in a different manner. I reject it for the same reason.

### D.     Past Relevant Work

Finally, Mr. Santiago argues that the ALJ erred at step four in finding that he was capable of performing past relevant work as a "car driver." (Pl. Br. points IV, V, VI, pp. 19–22) This part of the ALJ's opinion rested largely on the opinion of the vocational expert, Sasona. (R. 71)

Sasona found that Santiago's past relevant work as a car driver lay within the limitations of his RFC—*i.e.,* that it could be performed by someone with his limitations as found by the ALJ. (R. 238) That finding rested on the Dictionary of Occupational Titles ("DOT") description of the job of car driver (which includes an auto dealership "car jockey") as it is generally performed in the national economy:

> CODE: 919.683-014
> TITLE(s): DRIVER (auto. mfg.; automotive ser.) alternate titles: car driver
> Drives completed motor vehicle off assembly line to specified repair, shipping, or storage area. May test performance of parts, such as lights, horn, and windshield wipers. May drive completed vehicle onto railroad freight car and secure vehicle for shipping. May drive customer's vehicle to and from service area of repair shop and be designated Car Jockey (automotive ser.).
> GOE: 05.08.03 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 90

(DOT # 919.683-014) That job is unskilled and performed at a light level of exertion.

18

Santiago replies that his old job was not actually confined to that of a car driver as described in the DOT. In his vocational questionnaire, Mr. Santiago stated that one of his prior jobs had been as a "car jockey" for an automobile dealership. (R. 183) And concededly, for the most part, that job involved driving cars: ferrying customers and their cars from place to place, storing cars, swapping cars with other dealers. In addition, however, Santiago reported that his job involved washing cars, as well as cleaning and shoveling the parkway and parking lot. (*Id.*) He views it as a composite job, encompassing that of "car jockey" and "grounds keeper, industrial-commercial."

The job as *actually* performed, in Santiago's description, could be described as "car driver plus." It primarily involved driving cars, but also had potentially more demanding ancillary duties, such as shoveling. Santiago urges that the past work as *actually* performed is the only road to a valid step four finding.

A little more ambiguity is added by the phrasing of the ALJ's finding. The opinion describes the car driver job and incorporates the reasoning of the vocational expert, Sasona. The ALJ then finds as follows: "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually *and* generally performed." (R. 71 ¶ 6 (emphasis added)) If by "this work," the ALJ meant the work described in the preceding paragraph (*i.e.,* DOT # 919.683-014, the job discussed by VE Sasona), then the "actually performed" portion of the ALJ's finding does not follow. Some sort of additional finding about Santiago's ability to perform the shoveling and maintenance portion of the job would be required to close the gap. Neither the VE nor the ALJ made any such finding. I therefore find the ALJ's double-barrelled finding that Santiago meets the actual and general qualifications of his prior job to be at best ambiguous.

The SSA attempts to avoid the issue by arguing that, as a matter of law, step four requires only that the applicant meet the qualifications of his prior

work as generally, not actually, performed. There is some support for that view in the rather general requirement of the regulations that "[i]f you can still do *this kind* of work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(e), 416.920(e). But the SSA goes too far in arguing that the regulations themselves embody an either/or approach. What the regulations say is that the vocational expert may validly introduce *evidence* or an *opinion* as to both, and that such evidence may be "helpful in supplementing or evaluating the accuracy of the claimant's description of his past work." 20 C.F.R. §§ 404.1560(b)(2).[6] "Helpful" is not "dispositive." And no finding was made here as to the accuracy of Santiago's description of his duties.

The interpretive difficulty is recognized, and (non-authoritatively) resolved in an SSA Program Policy Statement, SSR 82-61 (reprinted at 1982 WL 31387). SSR 82-61 rejects (1) a broad test of prior employment that merely invokes a general occupational category, such as "delivery jobs" or "packaging jobs." At the other extreme, (2) the ability to do precisely the "individual job as [the claimant] actually performed it" would preclude a finding of disability. SSR

---

[6]   (2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. §§ 404.1560(b)(2).

82-61 declares that the third, intermediate alternative—ability to do the prior job as it is *generally* required by employers—will also suffice to preclude a finding of disability:

> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.

> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. . . [I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

> POLICY STATEMENT: Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; *or*

> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61, 1982 WL 31387, at *2. The SSA cites a nonprecedential decision of the Third Circuit which, while not really discussing the issue, appears to accept the approach of SSR 92-61. *See Diaz v. Comm'r of Soc. Sec.*, 440 F. App'x 70, 73 (3d Cir. 2011) ("The vocational expert testified that Diaz could perform her past relevant work, as it is generally performed in the national economy. See 20 C.F.R. § 404.1560(b)(2). Therefore, the ALJ's determination that Diaz was ineligible for DIB is supported by substantial evidence.")

   A policy statement, while entitled to respectful consideration, does not carry the authority of administrative rulemaking and does not bind the Court

21

to the extent it is not persuasive. *See Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 294 (3d Cir. 2012).

I am not wholly convinced by the reasoning of SS 82-61. Step four, like other preliminary steps of the analysis, sets forth a rule of thumb that permits claims to be denied, shortcutting further analysis. Step four embodies a commonsense conclusion that a claimant cannot be disabled if he or she is capable of returning to his or her old job. But if the "prior work" is not *the claimant's* prior job, but rather a job description from the DOT, what is the justification for shortcutting? To put it another way, how does a step four assessment of the job as "generally performed" differ from a step 5 determination that the claimant can perform work existing in the national economy? And if it is similar, what is the justification for omitting, *e.g.*, the step 5 requirement of proof that such jobs exist in significant numbers, or step 5's shifting of the burden of proof to the SSA?

There is no need, however, to delve into complex issues of administrative deference or to resolve this issue as a question of law. Having found the ALJ's step 4 finding to be ambiguous and incomplete, I will remand for further findings. An unambiguous factual finding at step 4 might well dispose of the issue. At any rate, to avoid delay and ensure a final resolution, I will require that the ALJ perform a step 5 analysis. I therefore remand the case to the ALJ, on the terms described in the Conclusion, immediately following.

## III.  CONCLUSION

The ALJ's decision is AFFIRMED IN PART, for the reasons expressed above. Steps 1 through 3 and the assessment of Mr. Santiago's RFC need not be revisited on remand. The ALJ's decision is, however, REVERSED AND REMANDED in part, for supplemental findings on step 4, and (irrespective of the results of step 4) for a finding on step 5. The following issues should be addressed on remand:

22

1. At step 4, is Mr. Santiago, with his RFC, able to perform the *actual* functions of his prior job (what I have called "car jockey plus")?

2. At step 5, is Mr. Santiago, considering his age, education, work experience, and RFC, capable of performing jobs that exist in significant numbers in the national economy?

The ALJ retains complete discretion to take further evidence and conduct further proceedings as she may deem necessary.

Dated: May 5, 2016


**KEVIN MCNULTY**
**United States District Judge**